**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| OUTOKUMPU STAINLESS USA, LLC, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CA 16-0378-KD-C |
| CONVERTEAM SAS, a foreign corporation now known as GE ENERGY POWER CONVERSION FRANCE SAS, CORP, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned on Motions to Remand filed by Plaintiffs Outokumpu Stainless USA, LLC, formerly known as Thyssenkrupp Stainless USA, LLC ("OTK Stainless") and by Sompo Japan Insurance Company of America ("Sompo"), Pohjola Insurance Limited, AIG Europe Limited, Tapiola General Mutual Insurance Company, AXA Corporate Solutions Assurance SA UK Branch, HDI Gerling UK Branch, MSI Corporate Capital Ltd., and Royal & Sun Alliance PLC (collectively, the "Plaintiff Insurers") (Docs. 34 and 35).  Also before the undersigned is Defendant GE Energy Power Conversion France SAS, Corp.'s ("GE Energy"), formerly known as Converteam SAS ("Converteam"), Motion to Dismiss as to Plaintiffs Pohjola Insurance Limited, AIG Europe Limited, Tapiola General Mutual Insurance Company, AXA Corporate Solutions Assurance SA UK Branch, HDI Gerling UK Branch, MSI Corporate Capital Ltd., and Royal & Sun Alliance PLC (collectively, the "Foreign Insurers") (Doc.

7).[1]  In reaching its decision, the Court has considered the Notice of Removal (Doc. 1), and exhibits thereto, including the Complaint, Defendant's Motion to Dismiss (Doc. 7), the Motions to Remand (Docs. 34 and 35), Defendant's Response in Opposition (Doc. 38), Plaintiffs' Replies in Support (Docs. 41 and 42), and all exhibits thereto.

Oral argument on these motions was held before the undersigned on November 3, 2016. Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS**, pursuant to 28 U.S.C. § 636(b) and General Local Rule 72(a)(2)(S), that the Motions to Remand (Docs. 34 & 35) be **DENIED** and that the Motion to Dismiss (Doc. 7) be **DENIED**.

## I.  Background and Procedural History

Plaintiff OTK Stainless owns a stainless steel manufacturing facility in Calvert, Alabama.   Doc. 38-2.   On November 25, 2007, OTK Stainless (then, Thyssenkrupp Stainless) entered into Contracts 1001, 1002, and 1003 (the "Contracts") with F.L. Industries Inc. ("FLI"), now known as Fives St Corp. ("Fives"), for the purchase of three Cold Rolling Mills ("CRMs") for the facility.   Doc. 1-1 (A).   Pursuant to the Contracts, FLI was to engage subcontractors necessary for the completion of the work.   *See id.* (§ 1.1).   To that end, the Contracts set out, in Annex A3, a list of "mandatory" vendors from which FLI could select to supply services and equipment under the Contracts, including, *inter alia*, Converteam, which is now GE Energy.   *See id.* (Annex A3). Subsequently, FLI entered into an Agreement for Consortial Cooperation (the "Consortial Agreement") with GE Energy and a third company, DMS SA ("DSM"), under which GE Energy was to provide electrical equipment for the Cold Rolling Mills.

---

[1]         What is not before the undersigned for decision, and a matter about which the undersigned offers no opinion, is GE Energy's motion to compel arbitration and dismiss (Doc. 6).

*See* Doc. 1-1 (D).  The Consortial Agreement states that GE Energy was "acting as sub-contractor[] of FLI."  *Id.*

Section 23.1 of the Contracts provides, in pertinent part:

All disputes arising between both parties in connection with or in the performances of the Contract shall be settled through friendly consultation between both parties.  In case no agreement can be reached through consultation … any such dispute shall be submitted to arbitration for settlement.

*See* Doc. 1-1(A) (§ 23.1).  This provision further states that arbitration shall take place in Germany, *id.* (§ 23.2), and that the "substantive law" of Germany "shall apply", *id.* (§ 23.5).

On June 10, 2016, OTK Stainless commenced this action against GE Energy in the Circuit Court of Mobile County, Alabama, alleging various state law tort and warranty claims arising from the alleged failure of motors GE Energy supplied to the Calvert facility.  *See* Doc. 1-2.  On July 18, 2016, GE Energy timely removed this action to this Court on two grounds: (1) federal subject matter jurisdiction pursuant to 9 U.S.C. § 205, which authorizes removal of an action where the subject matter of the suit "relates to" an arbitration agreement "falling under" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter, the "New York Convention" or the "Convention"); and (2) diversity jurisdiction based upon the fraudulent joinder of the Foreign Insurers, *see* Doc. 1.  GE Energy also moved to compel arbitration as to OTK Stainless and Sompo, *see* Doc. 6, and to dismiss the Foreign Insurers, *see* Doc 7.

On August 17, 2016, OTK Stainless and the Plaintiff Insurers separately moved to remand, although their arguments are largely the same, *see* Docs. 34 and 35.  With respect to removal under § 205, plaintiffs argue that GE Energy's Notice of Removal is facially deficient because GE Energy is not a party to the Contracts; thus, plaintiffs assert, because there is no agreement to arbitrate between OTK Stainless and GE

3

Energy, removal under 9 U.S.C. § 205 is improper.  *See* Doc. 35, pp. 5-6; Doc. 34, pp. 3-4.
With respect to the alleged fraudulent joinder of the Foreign Insurers, plaintiffs argue
that the theory of fraudulent joinder of a plaintiff has not been adopted in the Eleventh
Circuit and even if it did apply, GE Energy has not met its "heavy burden" to establish
it in this case.  Doc. 34, pp. 17-25.

## II.  <u>Standard of Review</u>

"It is . . . axiomatic that the inferior federal courts are courts of limited
jurisdiction."  *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 409 (11th
Cir. 1999).  They can hear "'only those cases within the judicial power of the United
States as defined by Article III of the Constitution,' and which have been entrusted to
them by a jurisdictional grant authorized by Congress."  *Id.*, quoting *Taylor v. Appleton*,
30 F.3d 1365, 1367 (11th Cir. 1994).  Further, "[a] defendant's right to remove an action
against it from state to federal court 'is purely statutory and therefore its scope and the
terms of its availability are entirely dependent on the will of Congress.'"  *Global Satellite
Comm'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004) (citation omitted).
"'[B]ecause the Constitution unambiguously confers this jurisdictional power to the
sound discretion of Congress, federal courts should proceed with caution in construing
constitutional and statutory provisions dealing with [their] jurisdiction.'"  *Smith v. GTE
Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001), quoting *University of South Alabama*, 168 F.3d
at 409.

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the
district courts of the United States have original jurisdiction, may be removed by the
defendant or the defendants, to the district court of the United States for the district and
division embracing the place where such action is pending."  The removing defendant
bears the burden of demonstrating that federal jurisdiction exists. *Triggs v. John Crump*

*Toyota, Inc.,* 154 F.3d 1284, 1287 n. 4 (11th Cir. 1998); *see also McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."). "Just as a plaintiff bringing an original action is bound to assert jurisdictional bases under Rule 8(a), a removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal[.]" *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1216-1217 (11th Cir. 2007), *cert.denied sub nom. Hanna Steel Corp. v. Lowery,* 553 U.S. 1080, 128 S.Ct. 2877, 171 L.Ed.2d 812 (2008).

### III.  Analysis

**A.  Removal Jurisdiction under 9 U.S.C. § 205.**

   **1.      Overview of the New York Convention**.

In 1958, the United Nations adopted the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "Convention").  The United States adopted the Convention in 1970 and enacted Chapter 2 of the Federal Arbitration Act ("the Act") to provide for its enforcement in federal court.  Pub. L. No. 91-368, 84 Stat. 692 (1970), codified at 9 U.S.C. §§ 201 *et seq.* The United States Supreme Court has explained that the goal of the Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n.15, 94 S.Ct. 2449, 2457 n.15, 41 L.Ed.2d 270 (1974) (internal citations omitted).  In analyzing Convention cases, this Court is mindful of the "emphatic federal policy in favor of arbitral dispute resolution[,] . . . [which] applies with special force in the field of international commerce." *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 82 L.Ed.2d 444 (1985).

Chapter 2 of the Act indicates Congress's desire to "promote the development of a uniform body of law under the Convention[,]" *Beiser v. Weyler*, 284 F.3d 665, 672 (5th Cir. 2002), which is "'best served by trying all [Convention] cases in federal court unless the parties unequivocally choose otherwise,'" *Acosta v. Master Maintenance & Constr. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006), quoting *McDermott Int'l v. Lloyds Underwriters of London,* 944 F.2d 1199, 1207-1208 (5th Cir. 1991). To this end, "Congress granted the federal courts jurisdiction over Convention cases and added one of the broadest removal provisions, § 205, in the statute books." *Id.* (internal footnote omitted).

The Act provides that an action "falling under the Convention shall be deemed to arise under the laws and treaties of the United States[,]" and district courts "shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203; *see Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir.) ("A case covered by the Convention confers federal subject matter jurisdiction upon a district court because such a case is 'deemed to arise under the laws and treaties of the United States.'"), *cert. dismissed*, 545 U.S. 1136, 125 S.Ct. 2954, 162 L.Ed.2d 884 (2005). The Act's broad removal provision allows a defendant to remove an action to federal court, at any time before trial, "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . . falling under the Convention[.]" 9 U.S.C. § 205; *see also Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1293 (11th Cir. 2015) (noting that § 205 permits removal "'[w]here the subject matter of an action . . . relates to an arbitration agreement or award falling under the [New York] Convention[.]'"), *cert. denied,* 136 S.Ct. 1158, 194 L.Ed.2d 174 (2016). Parties in such an action need not be diverse, since the action arises under federal law, nor is there any

amount in controversy requirement. *See Outokumpu Stainless, LLC v. Siemens Industry Inc.*, 2015 WL 6966150, *4 (S.D. Ala. Oct. 20, 2015) (citing 9 U.S.C. § 203), *report and recommendation adopted*, 2015 WL 6964667 (S.D. Ala. Nov. 10, 2015).  Further, "the ground for removal provided in [§ 205] need not appear on the face of the complaint but may be shown in the petition for removal."  9 U.S.C. § 205.

At issue in the motions before this Court is whether this action was properly removed pursuant to § 205. Plaintiffs urge this Court to adopt a narrow construction of the Act, arguing that GE Energy cannot avail itself of removal under § 205 because it is not a party or a signatory to the Contracts.  In support, plaintiffs cite to *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004) and *Rolls-Royce PLC v. Royal Caribbean Cruises Ltd.*, 2005 U.S. Dist. LEXIS 45416 (S.D. Fla. July 8, 2005).  GE Energy, on the other hand, argues that this action "relates to" an arbitration agreement falling under the Convention, whether or not it is a party or a signatory to the agreement, and therefore, the action was properly removed. GE Energy directs this Court's attention to *Beiser, supra, Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc.*, 631 F.3d 1133 (9th Cir. 2011), and *Reid v. Doe Run Resources Corp.*, 701 F.3d 840 (8th Cir. 2012), all of which have construed the language of § 205 broadly to mean that "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit."  *Beiser*, 284 F.3d at 669 (emphasis in original); *see also Infuturia Global*, 631 F.3d at 1138 (same); *Reid*, 701 F.3d at 843 (same). This Court is persuaded by the cases cited by GE Energy and concludes that it properly removed this action pursuant to § 205.

   2. **Section 205's "relates to" language**.

At the outset, this Court notes the lack of binding authority on this specific issue. As acknowledged by both parties, the Eleventh Circuit has not interpreted the phrase

"relates to" in the context of § 205.  Notwithstanding, a growing number of decisions in other circuits support the broad interpretation urged by GE Energy.  In the absence of binding authority in this Circuit, this Court looks to these other decisions as persuasive authority on this issue.

In *Beiser, supra*, the plaintiff, Fred Beiser, a consultant in the oil and gas industry, entered into two agreements as agent of his company, Horizon Energy Limited, to consult with defendant Huffington, Inc. on the acquisition of development rights to an oil and gas field. 284 F.3d at 666-667. The agreements contained clauses providing for arbitration of any dispute in London.  *Id.* at 667. After Beiser filed suit in state court on various state tort claims, the defendant removed pursuant to § 205, contending that the case "related to" the arbitration clause in the agreements. *Id.* Beiser moved to remand the action to state court, insisting that he was not a party to the arbitration agreements because he signed as an agent for Horizon Energy Limited and not in his personal capacity.  *Id.*  Thus, according to Beiser, Horizon Energy Limited agreed to arbitrate its disputes with the defendant, but individually he did not. *Id.*

As a matter of first impression, the Fifth Circuit reasoned that the "plain meaning of the phrase 'relates to' sweeps broadly" and held that "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' [] the plaintiff's suit[]" such that removal is proper. *Id.* at 669; *see also id.* at 674 ("The use of the broad phrase 'relates to' indicates that Congress's intent in § 205 was to confer jurisdiction liberally."). The *Beiser* court emphasized the "low bar" set by § 205, noting that "the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense." *Id.* at 669. "As long as the defendant's assertion is not completely absurd or impossible, it is at least

8

conceivable that the arbitration clause will impact the disposition of the case. That is all that is required" by § 205.  *Id.*  Under that standard, the court concluded that even if the plaintiff were "right on the merits that he cannot ultimately be forced into arbitration, his suit at least has a 'connection with' the contracts governing the transaction out of which his claims arise[,]" and removal was therefore proper.  *Id.*

Shortly after its decision in *Beiser*, the Fifth Circuit was presented with another opportunity to address the scope of § 205. In *Acosta v. Master Maintenance& Const. Inc.*, 452 F.3d 373 (5th Cir. 2006), the plaintiffs brought suit against Georgia Gulf Corporation ("GGC") for injuries allegedly stemming from a release of a mustard-gas agent at a GGC facility in Louisiana. *Id.* at 375.  Since Louisiana state law allows direct actions against a tortfeasor's insurers, plaintiffs also named as defendants two foreign insurers whose policies included arbitration clauses governing disputes over coverage. *Id.*  When plaintiffs amended their complaints to allege intentional tort claims, the foreign insurers notified GGC that they were disputing insurance coverage and later removed the action to federal court pursuant to § 205. *See id.* Plaintiffs moved to remand, arguing that, under *Beiser*, jurisdiction was lacking because Louisiana's direct-action statute overrides the binding effect of the arbitration clauses, and thus, the arbitration proceedings would have no binding effect on the litigation. *See id.* at 377-738.

Although plaintiffs urged the court to narrow the reach of § 205, the Fifth Circuit did just the opposite. The court noted that "the plain and expansive language of [§ 205] embodies Congress's desire to provide the federal courts with broad jurisdiction over Convention Act cases in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention." *Id.* at 376. The court added, "[s]o generous is the removal provision, that we have emphasized that the general rule of construing removal statutes strictly against removal 'cannot apply to Convention Act cases because

in these instances, Congress created special removal rights to channel cases into federal court.'" *Id.* at 377 (citation and footnote omitted). Building upon its decision in *Beiser*, the court held that the broad language of "relates to" in § 205 encompasses cases that have any "connection, relation, or reference" to an arbitration provision, *id.* at 378, quoting American Heritage Dictionary of the English Language (4th Ed. 2000), and concluded that "a clause determining the forum for resolution of specific types of disputes relates to a lawsuit that seeks the resolution of such disputes." *Id.* at 379; *see also id.* at 378-379 ("It is unarguable that the subject matter of the litigation has some connection, has some relation, has some reference to the arbitration clauses here.").

In *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133 (9th Cir. 2011), plaintiff sued the defendants for tortious interference with a licensing agreement it had with Yissum Research and Development Co. ("Yissum"). *Id.* at 1135-1136. This licensing agreement included a provision requiring arbitration of any dispute connected to the agreement, *id.* at 1135, and, although it was not a party to the lawsuit, Yissum sought a stay of the litigation pending arbitration, *id.* at 1136. Following arbitration, the state court lifted the stay, and the defendants removed the action pursuant to § 205. *Id.* The plaintiff moved to remand, arguing that removal was improper because the defendants were not parties to the arbitration agreement between Infuturia and Yissum. *Id*.

The Ninth Circuit emphasized that for purposes of determining whether removal is proper under § 205, "the critical language is 'relates to.'" *Id.* at 1137. Adopting the Fifth Circuit's broad interpretation of this language, the court held that "'whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit.'" *Id.* at 1138, quoting *Beiser*, 284 F.3d at 669. The court reasoned that the jurisdictional inquiry under § 205 does not hinge on the "relatedness of the *parties*" to the arbitration agreement, but

10

rather "focuses only on the relatedness of the '*subject matter* of [the] action . . . to an arbitration agreement.'"  *Id.,* quoting 9 U.S.C. § 205. The court refused to inject any "privity of contract" requirement as a prerequisite for removal jurisdiction and instead noted that "the statute invites removal of cases whose relation to an agreement or award under the Convention is based on an affirmative defense by expressly abrogating the 'well-pleaded complaint' rule." *Id.* (citations omitted); *see also id.* at 1138-1139 ("[N]othing in *Beiser* suggests that only parties privy to an arbitration agreement or award falling under the Convention may seek removal under § 205. Rather, *Beiser* confers removal jurisdiction 'whenever an arbitration agreement . . . could *conceivably* affect the outcome of the plaintiff's case. . . . .' [] In a case such as this, where the defendant relies on the affirmative defense of collateral estoppel regarding issues already resolved against the plaintiff in arbitration, the arbitral award 'could conceivably affect the outcome' of the case."). Because the arbitration agreement between Infuturia and Yissum could conceivably affect the plaintiff's case, the court held that removal was proper under § 205. *Id.* at 1139.

A year later, the Eighth Circuit joined the growing number of circuit courts adopting the *Beiser* Court's interpretation of § 205. In *Reid v. Doe Run Res. Corp.*, 701 F.3d 840 (8th Cir. 2012), the plaintiffs, children living near the defendants' smelting facility in Peru, brought suit for damages allegedly stemming from environmental contamination by the defendants. *Id.* at 842-843.  The defendants removed the action pursuant to § 205 based on the action's relationship to a pending arbitration proceeding with Peru, the previous operator of the smelting facility. *Id.* at 843. The plaintiffs moved to remand, contending that the suit did not "relate to" the arbitration proceeding because it would have no preclusive effect on the lawsuit. *Id.* at 843 & 844.

Like the Fifth and Ninth Circuits, the Eight Circuit embraced the "broad nature" of the phrase "relates to" and concluded that jurisdiction was proper because "the issues in the arbitration could conceivably affect the outcome of th[e] case." *Id.* at 844; *see also id.* at 843. The court rejected the plaintiffs' assertion that the cases were "completely independent and unrelated," reasoning that "either party could conceivably inject portions of the arbitration into this case." *Id.* at 844. "For example," the court noted, "if the arbitration panel found [the defendants] completely liable for all environmental damage and injuries, the [plaintiffs] could conceivably introduce that finding." *Id.*[2]

Plaintiffs acknowledge these decisions but argue that since the Eleventh Circuit has not adopted them, this Court should remand the action to state court under *Czarina* and *Rolls-Royce, supra.* In *Czarina*, which was originally filed in district court as an award-confirmation action pursuant to 9 U.S.C. §§ 201-208, the Eleventh Circuit held that the district court lacked subject matter jurisdiction because there was no agreement

---

[2]    The Second Circuit, although not specifically addressing § 205, has also considered the scope of subject matter jurisdiction under the Act and provides further support for the conclusion reached by this Court today. In *Sarhank Group v. Oracle Corp.*, 404 F.3d 657 (2d Cir. 2005), Sarhank Group ("Sarhank") entered into an agreement which contained an arbitration clause with Oracle Systems, Inc. ("Systems"), a wholly owned subsidiary of Oracle Corporation ("Oracle").  *Id.* at 658. Oracle was not a signatory to the agreement and did not execute any other written agreement to arbitrate with Sarhank. *Id.* Sarhank initiated an international arbitration against both Systems and Oracle. *Id.* Oracle objected on the grounds that it was not a signatory to the agreement. *Id.*

Sarhank prevailed in the arbitration and filed suit in federal court to confirm and enforce the arbitration award against Oracle, premising jurisdiction on 9 U.S.C. § 203.  *Id.* at 658-660. Oracle argued that the court lacked subject matter jurisdiction because there was no signed written agreement between Sarhank and Oracle.  *Id.* at 660.  In rejecting this argument, the court reasoned that Oracle's argument "depends entirely upon its view of the merits of the case, and therefore does not involve a lack of subject matter jurisdiction[.]" *Id.* The court concluded that Sarhank had established jurisdiction by "describ[ing] a written agreement between Systems and Sarhank; in effect, alleg[ing] that a legal relationship was created between Oracle and Sarhank because Systems was a shell corporation; and describ[ing] an arbitral award." *Id.* To consider the enforceability of that award against a non-signatory, the Second Circuit reasoned, the district court must assume jurisdiction. *See id.*

in writing between the parties. 358 F.3d 1289-1290; *see id.* at 1291 ("Where a party has failed to satisfy the agreement-in-writing prerequisite, courts have dismissed the action for lack of jurisdiction."). Importantly, however, in *Czarina*, there was no underlying agreement in writing *at all*. *Id.* at 1290. The plaintiff argued that an agreement existed based on a "Sample Wording" that included arbitration language, but the sample had not been prepared for the transaction in question, and the district court found that the parties had not agreed to it. *See id.* at 1289-1290; *id.* at 1289 ("The 1982 Sample Writing was simply a sample: it was not drafted for the Halvanon-Poe transaction."). Thus, the Eleventh Circuit concluded that because there was no agreement in writing, subject matter jurisdiction was lacking. *Id.* at 1290-1292.

In *Rolls-Royce*, the district court held that it lacked subject matter jurisdiction where there was no agreement to arbitrate signed by the parties before it. *See* 2005 U.S. Dist. LEXIS, at *22.  As instructed by *Czarina*, the court looked to the language of the Convention, which it read to restrict subject matter jurisdiction to those cases where the parties before the court had signed a written agreement. *Id.* The court acknowledged *Beiser* and other circuit court decisions "that have interpreted the FAA statutory provision as conferring jurisdiction to claims relating to an arbitration clause in an agreement to which one or more of the parties is not a signatory[]" but concluded that these decisions were not persuasive.  *Id.* at 24, n.10.

While this Court acknowledges the decisions cited by plaintiffs, it remains unpersuaded by plaintiffs' argument. First, *Czarina* is distinguishable because there was no written agreement *at all* in that case. *Compare* 358 F.3d at 1290 *with Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC*, 2007 WL 601992, *5 (S.D. Fla. Feb. 21, 2007) ("*Czarina* involved *no* written agreement, as opposed to a valid, signed written agreement that was simply not between the litigants[.]"). No party in this action disputes that there

must exist an agreement in writing falling under the Convention, and no party disputes that there is an agreement in writing here.  Thus, to the extent that *Czarina* is applicable, it is consistent with the decision reached by this Court today.

Second, *Rolls-Royce*, an unpublished opinion in another district, is not binding on this Court, and further, it has been called into doubt by at least one court in its home district. *See Regent Seven Seas Cruises, Inc., supra*, at *5 (noting that *Bautista* suggests that "the Eleventh Circuit would endorse a broader view of its subject matter jurisdiction under the FAA at this time," and reasoning that "clear logic" dictates that a court must first assume jurisdiction before determining whether parties, including non-signatories, are bound by an arbitration agreement).

More importantly, though, this Court concludes *Rolls-Royce* was wrongly decided. While *Czarina*, upon which *Rolls-Royce* heavily relies, holds that a prerequisite to jurisdiction is the existence of an agreement in writing, the *Rolls-Royce* court added as an additional jurisdictional prerequisite that the agreement in writing be "between the parties before the court." *Rolls-Royce*, *supra*, at 22. To reach this conclusion, the *Rolls-Royce* court cited Article II, § 3 of the Convention, which addresses when to *compel* a matter to arbitration. *Id.* In other words, the *Rolls-Royce* court did precisely what the *Beiser* court cautioned against: it frontloaded a merits inquiry into its examination of jurisdiction. *See Beiser*, 284 F.3d at 670.

The type of analysis engaged in by the *Rolls-Royce* court is inconsistent with purpose and intent of the Federal Arbitration Act and the broad "relates to" language of § 205. It also does not comport with Eleventh Circuit precedent suggesting a broad view of jurisdiction under § 205. *Bautista*, 396 F.3d at 1301 ("Section 205 does not require a district court to review the putative arbitration agreement—or investigate the validity of the signatures thereon—before assuming jurisdiction: 'The language of § 205 strongly

suggests that Congress intended that district courts continue to be able to assess their jurisdiction from the pleadings alone.'" (quoting *Beiser,* 284 F.3d at 671)); *see also Escobar, supra*, 805 F.3d at 1293 ("[T]he Convention Act permits a defendant to remove a case relating to an arbitration agreement covered by the New York Convention.").

Finally, this Court notes that although the Eleventh Circuit has not expressly adopted the circuit court decisions cited by GE Energy and discussed above in interpreting § 205, this Court recently applied *Beiser*'s interpretation of "relates to" in a dispute between OTK Stainless and another European supplier to the same Calvert facility. *Siemens Industry, supra,*, at *4 ("An action 'relates to an arbitration agreement' . . . if the agreement could 'conceivably affect the outcome of the plaintiff's case[.]'") (citing and quoting *Beiser*, 284 F.3d at 670; *Reid*, 701 F.3d at 843; *Infuturia Global*, 631 F.3d at 1138). Plaintiffs have not explained why this same interpretation should not apply in the instant case.

In light of the plain language of § 205, as well as the well-reasoned circuit court decisions addressing its scope, this Court concludes that an action "relates to" an arbitration agreement falling under the Convention if the agreement could "conceivably affect the outcome of the plaintiff's case." *See, e.g., Beiser*, 284 F.3d at 670.  This interpretation comports with the clear language of the statute and Congress's intent to confer broad federal jurisdiction over Convention Act cases. *See Reid*, 701 F.3d at 843. Further, like the courts in *Sarhank* and *Regent Seven Seas Cruises*, this Court is "persuaded by the clear logic that in order to determine whether litigants are bound by an admittedly existing arbitration agreement, a court must first assume jurisdiction to do so." *Regent Seven Seas Cruises, supra*, at *5; *see also Sarhank,* 404 F.3d at 660 ("When a party challenges the court's subject matter jurisdiction based upon the merits of the

case, that party is merely arguing that the adversary has failed to state a claim.  The court has and must assume subject matter jurisdiction and hear the merits of the case.").

Applying this standard to the instant case, the undersigned finds that this action "relates to" the arbitration agreement in the subject Contracts. The Contracts, whether GE Energy is a party to them or not, underlie the entire project at the Calvert facility, and GE Energy supplied the motors at issue as a subcontractor of FLI, which is a party and a signatory to the Contracts. Further, plaintiffs' complaint borrows language directly from the Contracts in alleging that GE Energy had a duty to "properly engineer, design, manufacture, fabricate, procure, deliver, install, supervise, supply and/or commission" the motors and equipment. *See* Doc. 1-1(A) (§2.1).  Section 23.1 of the Contracts requires arbitration of "[a]ll disputes between both parties in connection with or in the performances of the Contract[.]" *Id.* (§ 23.1). The engineering, design, manufacture, and supply of the motors certainly qualify as a dispute "in connection with or in the performances of the Contract."

Moreover, OTK Stainless (and Sompo as its subrogee) has separately sued Fives (formerly known as FLI) for breach of the Contracts, and Fives has successfully compelled that action to arbitration in Germany pursuant to § 23.1. The subject matter of the two actions is nearly identical. *See Infuturia Global*, 631 F.3d at 1138 (emphasizing that "§ 205 focuses only on the relatedness of the '*subject matter* of the action'" to the arbitration agreement). Both actions arise from the alleged failure of the motors designed and built by GE Energy. Although the theories of liability differ somewhat, the compensatory damages sought are the same. The outcome of any arbitration involving OTK Stainless and Fives could certainly impact the instant dispute, and either party "could conceivably inject portions of the arbitration into this case." *See Reid*, 701

F.3d at 844. In fact, under the Consortial Agreement, Fives could join GE Energy into that arbitration proceeding. *See* Doc. 1-1(D).

GE Energy has presented this Court with an agreement in writing signed by OTK Stainless and FLI, which requires arbitration of "all disputes arising between both parties in connection with or in the performances of the Contract." Although plaintiffs argue that GE Energy is not a party to this agreement, the undersigned finds that it is at least "conceivable" that the outcome of this dispute could be affected by the arbitration agreement.[3] Nothing more is required by the plain language of § 205. *See Infuturia Glob.*, 631 F.3d at 1139 (declining to add any "prerequisites to removal jurisdiction not expressed in the language of the statute"). So long as that agreement "fall[s] under the Convention," this action was properly removed.

### 3. **The *Bautista* Factors**.

Having concluded that this action relates to an arbitration agreement, this Court must determine whether the agreement is one that "fall[s] under the Convention." 9 U.S.C. § 205. The Eleventh Circuit has held that an arbitration agreement falls under the Convention if four jurisdictional prerequisites are met: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or [] the commercial relationship has some reasonable relation with one or more foreign states." *Bautista*, 396 F.3d at 1294 n.7; *see also Siemens Industry, supra*, at *4 ("An arbitration agreement falls under the

---

[3]    For the same reasons, the undersigned finds that it is "plausible (as opposed to merely conceivable)" that the outcome of this dispute could be affected by the arbitration agreement.  *Siemens Industry*, 2015 WL 6964667, at *1 (adopting report and recommendation).

Convention if [it] meets four jurisdictional [prerequisites set forth in *Bautista*].").  All four *Bautista* factors are met here.

First, there is an agreement in writing within the meaning of the Convention. The Convention defines an "agreement in writing" to "include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *See* the New York Convention, *supra*, Art. 2, § 2. Each Contract referenced above contains an arbitration agreement requiring that "[a]ll disputes arising between both parties in connection with or in the performances of the Contract" be arbitrated, and there is no dispute that these contracts were signed by OTK Stainless and FLI. While plaintiffs argue that GE Energy is not a signatory to the Contracts, as discussed above, this argument goes to the merits of GE Energy's motion to compel arbitration and does not undermine this Court's subject matter jurisdiction.

Second, the arbitration agreement provides for arbitration in the territory of a signatory to the Convention. Section 23.1 specifically requires that the arbitration be held in Germany, Doc. 1-1 (A) (§ 23.2), which is a signatory to the Convention. *See* the New York Convention, *supra*.

Third, the arbitration agreement arises out of a commercial, legal relationship. As acknowledged by the parties, the arbitration provision is contained in Contracts governing complex, commercial relationships and the "multi-million-dollar purchase of equipment," s*ee* Doc. 35, p. 9 n. 2, and thus is "undoubtedly commercial." *See id*.

Fourth, the commercial relationship has some reasonable relationship with one or more foreign states. The Calvert facility was developed by ThyssenKrupp AG, a German company with its principal place of business in Germany, through a U.S. subsidiary, and the Contracts include a German choice of law provision. Converteam, a French company with its principal place of business in France, supplied the CRM

motors, which were designed and manufactured in France. The undersigned also notes that plaintiffs allege that OTK Stainless is the subsidiary of a Finnish conglomerate, Outokumpu Oyj, and that Sompo is an American subsidiary of a Japanese insurer. On these facts, the Court finds that the fourth prerequisite is easily met.

In sum, the undersigned recommends that this Court conclude that GE Energy has met the requirements for removal pursuant to 9 U.S.C. § 205. GE Energy timely removed this action to this Court and clearly articulated the grounds for removal in its Notice of Removal.  *See* 9 U.S.C. § 205 ("the ground for removal provided in this section . . . may be shown in the petition for removal"). GE Energy stated that the action was removed pursuant to 9 U.S.C. § 205 based on the arbitration agreement contained in the Contracts, articulated the relationship between this action and the agreement, and satisfied the four *Bautista* factors to establish that the agreement falls under the Convention. Doc. 1, pp. 5-10.  Thus, the  removal of this action was proper under (and this Court has subject matter jurisdiction over this action pursuant to) 9 U.S.C. § 205 as "the subject matter of [this] action 'relates to an arbitration agreement . . . falling under the Convention[.]'" *Siemens Industry, supra,* at *4, quoting 9 U.S.C. § 205.

B. **Diversity Jurisdiction based on the Fraudulent Joinder of the Foreign Insurers**.

GE Energy also asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).  This provision, known as the "alienage provision," provides original jurisdiction over actions between "citizens of a State and citizens or subjects of a foreign state[.]" *Id.* GE Energy correctly acknowledges that the rule of complete diversity, requiring that all plaintiffs have a different citizenship than that of all defendants, applies equally to the alienage provision, *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir. 1989) (citation omitted), and thus, the presence of the Foreign

Insurers as plaintiffs defeats complete diversity. GE Energy asserts, however, that these plaintiffs have been fraudulently joined.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs, supra*, 154 F.3d at 1287. Typically, it arises where a plaintiff improperly joins a non-diverse *defendant* against whom "there is no possibility that the plaintiff can prove a cause of action[.]" *See id*. The Eleventh Circuit has not addressed whether fraudulent joinder applies to the joinder of plaintiffs. However, GE Energy has directed this Court to a number of district court decisions that have recognized that the doctrine applies equally to fraudulently joined plaintiffs. *See, e.g., Taco Bell Corp. v. Dairy Farmers of America Inc.,* 727 F.Supp.2d 604, 607 (W.D. Ky. 2010) (adopting the "majority view" and holding that "[t]here is no significant difference between fraudulent joinder of plaintiffs and fraudulent joinder of defendants."); *Miller v. Home Depot, U.S.A., Inc.,* 199 F.Supp.2d 502, 508 (W.D. La. 2001) ("The fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff."); *Sims v. Shell Oil Co.,* 130 F.Supp.2d 788, 796 (S.D. Miss. 1999) ("The principles of the doctrine of fraudulent joinder . . . apply to fraudulently joined defendants as well as fraudulently joined plaintiffs.").

Notwithstanding the intriguing argument put forth by GE Energy, the undersigned declines the invitation to consider this matter of first impression. Having determined that this Court has subject matter jurisdiction pursuant to 9 U.S.C. § 205, this additional ground for jurisdiction is of "no moment." Thus, the undersigned recommends that the Court leave for another day resolution of whether the fraudulent joinder doctrine applies equally to plaintiffs as it does to defendants.

C.   **GE Energy's Motion to Dismiss**.

In a related motion, GE Energy also moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint as to the Foreign Insurers for failure to state a plausible claim against GE Energy (Doc. 7). GE Energy contends that the Foreign Insurers have no claim against GE Energy because their principal, Outokumpu Oyj, the Finnish parent of OTK Stainless, has no cause of action against GE Energy.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.C.t 1937, 1949, 173 L.Ed.2d 868 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The court must construe all allegations in the complaint in the light most favorable to the plaintiff. *See, e.g.*, *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).  The benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(b) motion is established by Rule 8(a)(2), which requires that a pleading contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *See Iqbal*, 556 U.S. at 677-678, 129 S.Ct. at 1949, quoting Fed.R.Civ.P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *See Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. Further, "'a legal conclusion couched as a factual allegation'" need not be accepted as true. *Id*. (citation omitted). This standard demands that the factual allegations "raise a right to relief above the speculative level," *id.,* and "nudge[] the[] claims across the line from conceivable to plausible[.]" *Id.* at 570, 127 S.Ct. at 1974. In the final analysis, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 566 U.S. at 679, 129 S.Ct. at 1950.

According to the Complaint, the foreign insurers are "insurance carriers who insured Outokumpu Oyj," the parent company of OTK Stainless, "(and its subsidiaries, including Outokumpu Stainless) under a Master Insurance Policy that covered some of the loss that occurred at the Calvert facility." *See* Doc. 1-2, ¶ 3. In a section entitled "The Insurance Payments," plaintiffs set forth allegations of certain insurance payments that Sompo and the OTK Oyj insurers made to OTK Stainless and OTK Oyj. *See id.*, ¶¶ 25-31. Thus, plaintiffs allege, Sompo and the OTK Oyj Subrogees are "equitably and contractually subrogated to the rights of OTK [Stainless] and [OTK] Oyj to the extent of the payments made." *Id.*, ¶ 30.

GE Energy counters that while plaintiffs have alleged that certain payments have been made under the Master Policy, the Complaint identifies the Foreign Insurers  as subrogated only to the rights of Outokumpu Oyj, not OTK Stainless, and the Complaint is devoid of any allegations to support a claim on the part of Outokumpu Oyj against GE Energy.  In the absence of a plausible claim by Outokumpu Oyj, GE Energy argues, the foreign insurers likewise do not have any plausible claim.

The undersigned agrees with GE Energy that the Complaint's subrogation claims suffer from inartful pleading; however, construing the factual allegations in the light most favorable to the plaintiffs, as this Court must, the undersigned finds that the foreign insurers have stated a plausible cause of action. Plaintiffs' complaint asserts various negligence and breach of implied warranty claims based on the alleged failure of motors supplied by GE Energy and alleges that the foreign insurers paid millions of dollars to cover some of the loss suffered at the Calvert facility as a result of these alleged failures.  *See* Doc. 1-2, ¶¶ 3, 26, 27, 28, 30, 37, 38, 43, 49, 50, 58, 59. Although it is

unclear to whom the foreign insurers paid these amounts, construing these allegations in favor of the foreign insurers, the undersigned recommends that the Court find that the foreign insurers have set forth a plausible subrogation claim and, therefore, **DENY** GE Energy's motion to dismiss (Doc. 7).

## IV. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the Motions to Remand (Doc. 34 & 35) be **DENIED** and that the Motion to Dismiss (Doc. 7) be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not

specific.

    **DONE** this the 22nd day of November, 2016.

                s/WILLIAM E. CASSADY
                **UNITED STATES MAGISTRATE JUDGE**