IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| OUTOKUMPU STAINLESS USA LLC, *et al.*, | ) ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 16-00378-KD-C |
| | ) | |
| CONVERTEAM SAS, a foreign corporation now known as GE ENERGY POWER CONVERSION FRANCE SAS, CORP., | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

<u>ORDER</u>

This action is before the Court on the motion to compel arbitration and to dismiss filed by

Defendant GE Energy Power Conversion France SAS, Corp., formerly known as Converteam

SAS (GE); the response filed by Pohjola Insurance Limited, AIG Europe Limited, Tapiola General

Mutual Insurance Company, AXA Corporate Solutions Assurance SA UK Branch, HDI Gerling UK

Branch, MSI Corporate Capital Ltd., and Royal & Sun Alliance PLC (the Insurers); the response

filed by Outokumpu Stainless USA, LLC (OTK); and GE's reply (docs. 62, 64, 66, 67).  Upon

consideration, and for the reasons set forth herein, GE's motion to compel arbitration (doc. 62) is

**GRANTED** and the claims of the Insurers are referred for arbitration in accordance with the

terms of the Supply Agreements. Accordingly, GE's motion to dismiss is **GRANTED.**  The

Clerk of the Court is directed to close this action.

I. <u>Background</u>

On November 25, 2007, Thyssenkrupp Stainless USA, LLC (TK Stainless) entered into

three separate contracts, Supply Agreements 1001, 1002, and 1003, with F.L. Industries Inc. now

known as Fives St Corp. (FLI), for the purchase of three Cold Rolling Mills for its stainless steel

manufacturing facility in Calvert, Alabama (docs. 5-1, 5-2, 5-3, under seal). Each Supply

Agreement identifies TK Stainless as the "Buyer" and FLI as the "Seller" and refers to them "collectively as 'Parties'" (Docs. 5-1, 5-2, 5-3, p.  5).  The Supply Agreements further provide an agreed interpretation that "[w]hen Seller is mentioned it shall be understood as Sub-contractors included, except if expressly stated otherwise." (Docs. 5-1, 5-2, 5-3, p. 9, § 1.2. "Interpretations")  "Sub-contractor" is defined as "any person (other than the Seller) used by the Seller for the supply of any part of the Contract Equipment, or any person to whom any part of the Contract has been sub-let by the Seller[.]" (Id., §1.1 "Definitions").   "Contract Equipment" means the mill and "all equipment, machines, parts, components and/or spare parts, to be delivered as stipulated within the Seller's scope of supply." (Id. at p. 7).

Pursuant to the Supply Agreements, FLI was to engage subcontractors and suppliers necessary for the completion of the work and the supply of equipment, etc. To that end, the Supply Agreements set out, in Annex A3, a list of "mandatory" vendors identified by TK Stainless from which FLI could select as suppliers of services and equipment, including, inter alia, Converteam, now GE (docs. 5-1, 5-2, 5-3, p. 91, under seal).  Subsequently, FLI entered into an Agreement for Consortial Cooperation (the Consortial Agreement) with GE and a third company, DMS SA (DMS) under which GE was to provide electrical equipment for the Cold Rolling Mills.  The Consortial Agreement states that GE was "acting as subcontractor[] of FLI" (doc. 5-4, p. 2). GE designed, engineered and manufactured the motors in France, which were then shipped to and installed in TK Stainless's facility in Alabama.

Relevant to GE's motion to compel arbitration, Section 23.1 of the Supply Agreements provides, in pertinent part, as follows:

> All disputes arising between both parties in connection with or in the performances of the Contract shall be settled through friendly consultation between both parties. In case no agreement can be reached through consultation … any such dispute shall be submitted to arbitration for settlement.

(Docs. 5-1, 5-2, 5-3, under seal, at § 23.1)  The Supply Agreements further provide that arbitration shall take place in Dusseldorf, Germany, be "conducted in accordance with the Rules of Arbitration of the International Chamber of Commerce" and that the "substantive law of Federal Republic of Germany shall apply" (*id*. at § 23.2, 23.5).

In 2014, after OTK acquired the facility from TK Stainless, one of the motors supplied by GE (formerly Converteam) failed.  Inspection of the other motors supplied by GE showed similar issues as the failed motor.

On June 10, 2016, OTK and the Insurers filed this action against GE in the Circuit Court of Mobile County, Alabama.  OTK asserted causes of action for negligence, breach of professional design and construction warranties, breach of implied warranties, and product liability under the Alabama Extended Manufacturer's Liability Doctrine arising from the alleged failure of the motors supplied by GE (doc. 1-2).  The Insurers alleged that they paid OTK and its corporate parent Outokumpu Oyj under the policies for the losses claimed for the motors' failures. The Insurers assert that they are equitably and contractually subrogated to the rights of OTK and Outokumpu Oyj, to the extent insurance payments were made (*id.*).

On July 18, 2016, GE removed the action to this Court.  GE alleged two jurisdictional grounds: (1) federal subject matter jurisdiction pursuant to 9 U.S.C. § 205, which authorizes removal of an action where the subject matter of the suit "relates to" an arbitration agreement "falling under" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention); and (2) diversity jurisdiction based upon the fraudulent joinder of the Insurers as plaintiffs.  After removal, GE moved to compel arbitration as to OTK and Insurer Sompo Japan Insurance Company of America (Sompo) and moved to dismiss the remaining Insurers (docs. 6,7).  GE argued that the Insurers had failed to state a claim because they alleged they

were subrogees of Outokumpu Oyj, the parent company for Outokumpu Americas, Inc., the sole member of OTK, but not subrogees of OTK, the plaintiff.  GE argued that since OTK Oyj had not been damaged by the failure of the motors, it had no claim against GE.  The Insurers assert that "the rights of the OTK Oyj Subrogees are derivative of and dependent upon the rights of OTK Oyj, and because OTK Oyj has no claim against GE Energy, neither do they" (doc. 7, p. 6).

On August 17, 2016, OTK and the Insurers moved to remand (docs. 34 and 35). The motions to remand and GE's motion to dismiss the claims of the Insurers were denied (doc. 57, Order adopting Report and Recommendation).  On January 30, 2017, GE's motion to compel arbitration was granted and GE, OTK and Sompo were referred to arbitration as provided in the Supply Agreements (doc. 68).  GE's motion to compel the remaining Insurers is now pending before the Court (doc. 62).

II. <u>Statement of the law</u>

 "The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York Convention, is a multi-lateral treaty that requires courts of a nation state to give effect to private agreements to arbitrate and to enforce arbitration awards made in other contracting states. The United States, as a signatory to the Convention, enforces this treaty through Chapter 2 of the U.S. Federal Arbitration Act (FAA), which incorporates the terms of the Convention[.]"  *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116 (11th Cir. 2009) (*abrogation on other grounds recognized by Williams v. NCL (Bahamas) Ltd.,* 686 F. 3d 1169 (11th Cir. 2009)).  The Court of Appeals for the Eleventh Circuit, quoting the Supreme Court, "has explained that 'the principal purpose' behind the adoption of the Convention 'was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral

awards are enforced in the signatory countries.'" *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 545 (11th Cir. 2016) (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S. Ct. 2449 1974)).

     "To implement the Convention, Chapter 2 of the FAA provides two causes of action in federal court for a party seeking to enforce arbitration agreements covered by the Convention: (1) an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206, and (2) at a later stage, an action to confirm an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011).

     "In determining whether to compel arbitration under the Convention Act, a district court conducts 'a very limited inquiry.'" *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1285 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1158 (2016) (internal quotations and citation omitted) (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005)). "An arbitration agreement falls within the jurisdiction of the New York Convention if: (1) the agreement is 'in writing within the meaning of the [New York] Convention'; (2) 'the agreement provides for arbitration in the territory of a signatory of the [New York] Convention'; (3) 'the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial'; and (4) a party to the agreement is not an American citizen or the commercial relationship has some reasonable relation with one or more foreign states." *Suazo,* 822 F.3d at 546 (quoting *Bautista*, 396 F.3d at 1294 n. 7) (bracketed text in original).  The Eleventh Circuit has held that "the Convention requires that a motion to compel arbitration must be granted 'so long as (1) the four jurisdictional prerequisites are met and (2) no available affirmative defense under the Convention applies.'" *Suazo,* 822 F. 3d at 546 (quoting *Lindo,* 652 F.3d at 1276).  "If these prerequisites are met, then the court should compel arbitration pursuant to the agreement

unless the agreement is 'null and void, inoperative or incapable of being performed,' pursuant to Article II of the Convention." *Clair v. NCL (Bahamas), Ltd*., 2013 WL 12128723, at *1 (S.D. Fla. June 5, 2013) (citing Convention, art. II (3); *Bautista*, 396 F.3d at 1301)) (footnote omitted). Overall, "a district court must be mindful that the Convention Act generally establishes a strong presumption in favor of arbitration of international commercial disputes." *Escobar v. Celebration Cruise Operator, Inc.,* 805 F. 3d 1279, 1286 (11th Cir. 2015) (internal quotations and citation omitted).

"Notwithstanding this strong federal policy, 'an agreement to arbitrate, just like any other contract, may be waived.'" *Grigsby & Associates, Inc. v. M Securities Investment*, 635 Fed. Appx. 728, 731 (11th Cir. 2015)(quoting *Ivax Corp. v. Braun of America, Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002)). "'A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right and, in so acting, has in some way prejudiced the other party.'" *Grigsby & Associates, Inc.,* 635 Fed. Appx. at 731 (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co*., 906 F.2d 1507, 1514 (11th Cir.1990)). "There is no set rule ... as to what constitutes a waiver ... of the arbitration agreement." *Id*. (citing *Burton–Dixie Corp. v. Timothy McCarthy Constr. Co*., 436 F.2d 405, 408 (5th Cir.1971)). "Whether waiver has occurred 'depends upon the facts of each case.'" *Id.*

The Eleventh Circuit "'recognized that a party who substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate.'" *Grigsby & Associates, Inc.,* 635 Fed. Appx. at 731 (quoting *S & H Contractors, Inc*., 906 F.2d at 1514); *Morewitz v. West of England Ship Owners Mutual Protection & Indemnification Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995) (waiver "occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation

6

results in prejudice to the opposing party."). "Prejudice exists when the party opposing

arbitration 'undergo[es] the types of litigation expenses that arbitration was designed to

alleviate.'" *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir. 2014)

"Additionally, in determining whether there is prejudice to the other party, [the district courts]

may consider the length of delay in demanding arbitration and the expense incurred by that party

from participating in the litigation process." *Grigsby & Associates, Inc.,* 635 Fed. Appx. at 731-

732 (quoting *S & H Contractors, Inc*., 906 F. 2d at 1514) (bracketed text added). Overall, the

party who asserts waiver bears the burden of proof. *Grigsby & Associates, Inc.,* 635 Fed. Appx.

at 732.

    III. <u>Analysis</u>

    GE moves the Court to compel the Insurers to arbitrate their claims against GE and to

dismiss those claims without prejudice (doc. 62). In support, GE adopts and incorporates the

arguments from its earlier motion to compel arbitration as to OTK and Sompo (doc. 6) and its

reply (doc. 38). In addition, GE argues that the remaining Insurers are subrogated to the rights of

the insured OTK, and therefore, they too must arbitrate their claims against GE.

    The Insurers argue that GE waived its right to arbitrate by filing the motion to dismiss for

failure to state a claim, instead of a motion to compel arbitration, and then waiting until the

motion to dismiss was denied five and one-half months later to file the motion compel

arbitration. The Insurers argue that GE acted inconsistently with the right to arbitration by

substantially invoking the litigation process. The Insurers also argue that they were prejudiced

because of the expenditure of resources to respond to the motion to dismiss and attend oral

argument, and then after the Magistrate Judge issued the Report and Recommendation, to

respond to GE's partial objection to the Recommendation. Alternatively, the Insurers adopt and

incorporate their prior arguments in opposition to GE's motion to compel arbitration as to OTK and Sompo (docs. 34, 41).

As to waiver, the Court finds that under the totality of the circumstances, GE has not waived its right to arbitrate.  Although GE moved to dismiss the Insurers' claims for failure to state a claim, the argument was limited to whether the Insurers were subrogees of OTK such that they too were parties to the action and could state a claim against GE. The parties did not address the merits of the claims raised in the complaint.  The Magistrate Judge succinctly stated GE's argument as follows: "GE Energy contends that the Foreign Insurers have no claim against GE Energy because their principal, Outokumpu OYJ, the Finnish parent of OTK Stainless, has no cause of action against GE Energy." (Doc. 50, p. 21)  Thus while OTK and the Insurers briefed and argued the issue, and responded to GE's objections to the Report and Recommendation, the totality of the circumstances indicates that GE did not substantially litigate to a point inconsistent with invoking its right to arbitration before moving to compel arbitration as to the Insurers.  *See Grigsby & Associates, Inc*., 635 Fed. Appx. at 733–734 (finding that incurring minimal time and resources "in responding to [placeholder] lawsuits is insufficient to establish prejudice supporting a finding of waiver.") (citations omitted).

One other factor weighs in favor of finding that GE has not waived its right to arbitrate. The parties do not appear to have engaged in any discovery. Review of the docket indicates that the action was removed on July 18, 2016 and that July 25, 2016 was the deadline for GE to answer.  GE timely filed the motion to dismiss and the motion to compel arbitration before the deadline.  GE did not file an answer. Therefore, the Court did not enter a preliminary scheduling order.  The parties did not meet and file a report of parties' planning meeting and consequently, no Rule 16(b) Scheduling Order has been entered.  Since there has been no pre-trial discovery,

the Insurers' "legal position" has not been prejudiced. *Garcia*, 699 F.3d at 1278. Nor have they

been prejudiced by the expense of discovery, *i.e.*, a type of litigation expense that arbitration was

meant to alleviate. *Id.*

Moreover, the motion to dismiss did not address the merits of the Insurers' claims against

GE, but instead challenged their capacity as subrogees of OTK and Outokumpu Oyj to sue GE.

Therefore, the Insurers and OTK have not been prejudiced by a contest of the merits that

occurred before the motion to compel arbitration was filed.  *See Zimmer v. CooperNeff Advisors,*

*Inc.*, 523 F.3d 224, 231–32 (3d Cir. 2008) (including "the degree to which the merits of the

nonmovant's claims have been contested by the party moving for arbitration" as a factor

"relevant to the prejudice inquiry").

The parties adopted and incorporated their respective arguments raised in the motion to

compel arbitration as to OTK and Sompo, the responses, and the reply.  The Court has now

addressed those arguments and found that the prerequisites set forth in *Bautista v. Star Cruises*,

396 F.3d 1289, 1294 (11th Cir. 2005) have been met. The Court ordered OTK and Sompo to

arbitrate their claims against GE (doc. 68). Thus, for the reasons set forth in the Court's order

granting the motion to compel arbitration as to OTK and Sompo, and the reasons in support of

the decision that Sompo, as OTK's subrogee was bound by the same arbitration provisions in the

Supply Agreements as its insured, the Court finds that the Insurers as subrogees of OTK are also

bound by the same arbitration provisions in the Supply Agreements, and therefore, must submit

to arbitration. *See Alstom Brasil Energia e Transporte Ltda. v. Mitsui Sumitomo Seguros S.A.*,

2016 WL 3476430, at *4–5 (S.D.N.Y. June 20, 2016) (finding that the "Mitsui-Alunorte

insurance contract gave Mitsui a clear subrogation right" and that "[b]y pursuing Alunorte's

contract claim against Alstom, Mitsui was bound by the arbitration clause that would have bound

Alunorte.") (collecting cases).

IV. <u>Conclusion</u>

Upon consideration of the foregoing, GE's motion to compel arbitration (doc. 62) is **GRANTED** and the claims of the remaining Insurers are referred for arbitration in accordance with the terms of the Supply Agreements. Accordingly, the motion to dismiss is **GRANTED.**

DONE and ORDERED this the 3rd day of February 2017.

**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**